SCHEUER, Respondent, vs. COCHEM, Appellant.

*October 26—November 14, 1905.*

*Statute of frauds: Oral contract for partnership in lands: Possession: Specific performance.*

1. An oral agreement by which the parties were to become jointly interested, as partners, in the purchase of land—one to advance the whole purchase price and take the title in his own name and afterwards, on repayment to him of one half the sum so advanced, with interest, to convey an undivided half to the other party, is within the statute of frauds (sec. 2302, Stats. 1898); and it is immaterial whether the party so orally agreeing to convey was the owner of the land at the time or whether he afterwards acquired the title.

2. The party in whom was the title having collected the rents and managed the property, the mere facts that he paid some of the rent to the other party and that the latter made some repairs on the premises did not put the latter in possession or constitute such a part performance as would entitle him to specific performance of the oral agreement to convey.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

This action was commenced April 28, 1902, to dissolve an alleged copartnership in a house and lot described and for an accounting. Issue being joined and trial had, the court found as matters of fact, in effect: (1) That April 25, 1900, the defendant requested the plaintiff to become jointly interested in the purchase of the premises described; that it was orally agreed that he should do so; that by the terms of the agreement they were to own, handle, manage, care for, rent, repair, and sell the premises as copartners, each paying one half of the purchase price and all necessary expenses, including insurance and taxes; that the net profits arising therefrom and from the sale thereof should be divided equally between them; that the defendant should advance the whole of the agreed purchase price of $300, and that the plaintiff should repay to him one half thereof with interest at six per cent., and that the title should be taken in the name of the defendant; that when the plaintiff should fully pay his share of the purchase price, then the defendant was to convey to him an equal undivided one-half thereof. (2) That in accordance with such agreement the defendant purchased said real estate and took the title in his own name, with the agreement that he would so convey the equal undivided one-half upon receiving the $150 and interest. (3) That immediately after the purchase they entered into possession and retained the same until December 12, 1901; that during such time numerous repairs and improvements were made upon the same; that during that time the plaintiff, in addition to his personal services, paid, laid out, and expended for repairs and im-

provements, insurance, and taxes $40.66, and the defendant expended for similar purposes, exclusive of his personal services, $50.58. (4) That all rents, profits, and income from said premises were paid to the defendant, who accounted therefor to the plaintiff, and paid him one half thereof, except $5.33, which sum is charged to defendant in this accounting. (5) That about June, 1901, the plaintiff paid the defendant $9 interest for one year on the $150, and January 22, 1902, the plaintiff tendered to the defendant $157.50, being the full amount due to the defendant for the one-half interest in the premises. (6) That December 12, 1901, the defendant sold and conveyed the premises to his sister for $375, secretly, and without consulting the plaintiff. (7) That before bringing this action the plaintiff demanded of the defendant a settlement of said partnership affairs, but the defendant refused to do so and denied the existence of any partnership agreement, and claimed that he had the title to the premises and should hold what the law gave him; that the defendant recognized and performed such copartnership agreement until shortly before his conveyance to his sister. (8) That December 12, 1901, the value of the premises was $500. (9) That there was no special agreement that either party should be compensated for his personal services so rendered, and there are no special circumstances from which such agreement can be implied. (10) That the defendant should be charged with the value of such real estate, $500, also with the sum of $5.33 rent received by him and not accounted for, and the defendant should be credited with $50.58 and the amount of the plaintiff's debt to him, $157.50, and one half the net assets, $207.05, and the plaintiff is entitled to recover from the defendant the sum of $90.20 with costs. And as conclusions of law the court found, in effect, that the plaintiff is entitled to judgment dissolving the partnership; that the plaintiff recover from the defendant $90.20 due the plaintiff upon the adjustment of the copartnership account, and that

the plaintiff recover his costs and disbursements in the action. From the judgment entered thereon accordingly the defendant appeals. The findings in so far as they found or pertain to a partnership in said real estate are severally excepted to, and by agreement the evidence as to such matters was taken subject to objection.

·A. L. Houigen, for the appellant.

The cause was submitted for the respondent on the brief of Nash & Nash.

CASSODAY, C. J. As indicated in the foregoing statement, the· court found that on April 25, 1900, the parties orally agreed to become jointly interested, as partners, in the purchase of the house and lot in question, the defendant to advance the whole of the agreed purchase price of $300 and take the title in his own name, and the plaintiff to repay to him one half thereof with interest at six per cent., and when fully paid the defendant was to convey to him an equal undivided one-half thereof. The court further found that, after making such oral contract, the "defendant purchased the real estate described in the complaint from one Wenzel Pisarik." The complaint alleged that on April 25, 1900, the defendant was the owner of such real estate; and being the owner, "he and' this plaintiff entered into a copartnership agreement," in respect to such real estate, similar to the one found by the court. The answer expressly admits that on April 25, 1900, the defendant was "the owner· in fee of the real estate" described, but denied the making of any such partnership agreement; and alleged that if any such contract was made it was "merely verbal and not in writing," and hence void under the statute. Whether at the time of making such verbal agreement the defendant was the owner in fee of such real estate, or subsequently purchased and acquired the title to the same, does not seem to be very material, since in either case the attempt was made to bind the defendant by verbal contract to convey to

the plaintiff the undivided one-half of the house and lot in
question, "upon receiving from him one half of the purchase
price, to wit, the sum of $150, with interest thereon at the
rate of six per cent. per annum" from the date of such pur-
chase.   The important question in the case is whether such
verbal agreement was within the statute which declares that
"no estate or interest in lands . . . nor any trust or power
over or concerning lands or in any manner relating thereto
shall be created, granted, assigned, surrendered or declared
unless by act or operation of law or by deed or conveyance in
writing, subscribed by the party creating, granting, assigning,
surrendering or declaring the same or by his lawful agent
thereunto authorized by writing."   Sec. 2302, Stats. 1898.
It was held by this court, at an early day, that "an agreement
for a partnership in dealings in real estate is within the stat-
ute of frauds, and void unless in writing;" and "the fact that
the parties making such agreement are engaged at the time
in a mercantile partnership does not take it out of the stat-
ute."  *Bird v. Morrison,* 12 Wis. 138.  In a later case, where
land was purchased for a partnership of lawyers with partner-
ship funds, it was held that "an oral agreement between two
persons to purchase land together, each to pay half of the pur-
chase money, and to take the title in the name of one for their
joint use and benefit, is void under the statute of frauds."
*Clarke v. McAuliffe,* 81 Wis. 104, 51 N. W. 83.  To the same
effect: *McMillen v. Pratt,* 89 Wis. 612, 630, 62 N. W. 588;
*Seymour v. Cushway,* 100 Wis. 580, 76 N. W. 769.  In the
case of *Smith v. Putnam,* 107 Wis. 155, 162–164, 82 N. W.
1077, 83 N. W. 288, cited by counsel on both sides, the part-
nership was proved and both parties proceeded without ob-
jection until the hearing of the motion to confirm the referee's
report, when the defendants objected to the adjudication of
the amount due.

"All the transactions were so completed as to make nothing
necessary but the ascertainment of a money balance due from

one partner to another. *Held,* that defendants' conduct was such as to waive any objection to the form of the action which they might have made by reason of the fact that the claim grew out of a partnership."

The statute also declares that "nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements." Sec. 2305, Stats. 1898. This section neither abridges nor adds to the powers of courts of equity in relation to verbal contracts concerning lands. *Smith v. Finch,* 8 Wis. 245. The question recurs whether the plaintiff could have maintained an action for specific performance. It has often been held that the mere payment of a portion or the whole of the purchase price, unaccompanied by any other act, is not such part performance of a parol agreement for the sale of lands as takes the case out of the statute. *Blanchard v. McDougal,* 6 Wis. 167; *Smith v. Finch,* 8 Wis. 245; *Brandeis v. Neustadtl,* 13 Wis. 142; *Horn v. Ludington,* 32 Wis. 73; *Cutler v. Babcock,* 81 Wis. 195, 51 N. W. 420; *Harney v. Burhans,* 91 Wis. 348, 352, 64 N. W. 1031. Such payment, together with a delivery of the possession by the vendor to the vendee, has been held to be such part performance as takes the case out of the statutes, especially if followed by making improvements. *Blanchard v. McDougal, supra; McWhinne v. Martin,* 77 Wis. 182, 196, 46 N. W. 118, and cases there cited; *Harney v. Burhans, supra,* and cases there cited. But to have that effect the possession must be taken pursuant to such parol contract. Thus it has been held that "when the purchaser by parol is a tenant in possession of the vendor, his continued possession will be referable to the tenancy and not to the contract of purchase." *Blanchard v. McDougal, supra.* To the same effect, *Knoll v. Harvey,* 19 Wis. 99.

It has been held in one of the cases cited that "a bill for specific performance cannot be maintained where the con-

tract to purchase is verbal, and the buyer has sent to the vendor part of the purchase money, and notes and mortgage to secure the balance, unless he has also been let into possession of the premises." *Smith v. Finch, supra.* In the case at bar the court found that, immediately after the purchase of the real estate, the plaintiff and defendant entered into the possession of the same and made numerous repairs and improvements. But it is obvious from other findings mentioned, as well as the evidence, that this finding is a mere conclusion, based upon the assumption that the verbal agreement made the plaintiff and defendant partners in the joint ownership of the house and lot. It is undisputed that during all the time in question the title was in the defendant. He collected the rents and managed the property, and finally conveyed it to his sister. The mere facts that he paid some of the rent to the plaintiff and that the plaintiff made some repairs did not put the latter in possession. As stated in several of the cases cited, full payment of the purchase price is not sufficient to take a case out of the statute, so that specific performance will be decreed, unless accompanied by *actual possession* or some act whereby the vendee has received an injury for which a court of law cannot give a complete remedy. *Harney v. Burhans,* 91 Wis. 348, 352, 64 N. W. 1031, and cases there cited. Here the plaintiff's only claim to any interest in the land is referable to and predicated upon the alleged verbal contract. This action is based wholly upon that contract, which was void under the statute. This is the only question calling for consideration.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.